Thank you. You may be seated. Our next case for on bonk oral argument today is case number 2023 30825. In trail Parker at all versus Tim Hooper at all. You may proceed. Thank you, Chief Judge Elrod. And may it please the court, regardless of whether the court has jurisdiction in the last case, it at least has jurisdiction in this appeal on appeal from the district courts final judgment. We think the most straightforward way to resolve this is to look at what the district court did and assert jurisdiction under 1291. But if you had any doubts 1292 a one assures jurisdiction, just as well. So we think that whatever path the court chooses it has jurisdiction in this appeal. Now, if I can, I'd like to start with 1291. I'd like to start with Morales, and I'd like to start with plaintiff's position on Morales because they could have come to the on bonk or and asked you to overturn Morales, but they did not. They accept its standard. They accept that it remains good law. And so the only question here is whether we need the morale of standard for jurisdictions as the court is aware. What Morales said in footnote six is that so long as the district court specifies the minimum standards that it expects in a remedial plan, that order is immediately appealable. We fall squarely within that. I think what this analysis ultimately comes down to is a matching up of what the minimum standards were in Morales that the district court there articulated and what the district court in our case has articulated. My friend, of course, in the brief supplemental brief from the plaintiff's sites, I think the most specific minimum standards you could find in the Morales district court's orders at page eighty eight of that district court order. No doubt there are specific standards like that. There are also many others in the Morales district court opinion that this court saw and approved as immediately appealable. And I just want to point the court to a few spots that are particularly probative on that point. So, for example, look at page ninety two of the Morales district court opinion there. The court's minimum standards are adequate procedures to ensure job placement, adequate on the job training, adequate support services. Look at page one hundred of the Morales district court decision, adequate casework services, opportunity for adequate recreation, an adequate, well-prepared, well-served diet. And then I think the most probative for our purposes are what you see at page one oh five, because like this case, Morales was a case in part about health care at an institution. And at page one oh five, the minimum standards that the Morales district court cited that should be included in a remedial plan were as follows. Adequate infirmary facilities, access to medical staff without delay or interference, sufficient psychiatric nursing assistance, sufficient medical staff. Those are the standards that this court was referring to in footnote six of the Morales decision when it said that this order from the district court in Morales was immediately appealable. And with all the respect, my friends on the other side, what we have in this case is leaps and bounds beyond what this court sought in Morales. We have two opinions from the district court. We've got over 100 pages of a liability opinion, over 100 pages of a remedy opinion that the remedial order then incorporates expressly by reference. And what the district court says in the remedial order is it charges the special masters with preparing and then implementing plans to cure, to cure and eliminate each of the specified violations that the district court had already identified in those two prior opinions. But isn't it true that just because a district judge orders some things while the case is going on, that that is enough to appeal? I mean, this is still got things that the judge wanted to keep doing, such as what you just said, the special masters. So while I understand that there's always orders from judges in the district court, that does not make it appealable. So, Your Honor, I think with all due respect, what happened in this case is the district court entered final judgment, closed the case at ROA 30660. It says you're entitled to a permanent injunction. I'm going to enter a separate order with that permanent injunction. But didn't close the case, said there was still some things going on, said some of it's closed, but some of it's going on. So and now, as I understand your argument on appeal, you think we have jurisdiction, but we need to remand it back. So what is it that we need to decide besides jurisdiction? If if the majority of this court ended up finding there was jurisdiction, you would still just remand the case. Right. And your opponent says remand the case. So why don't we just remand the case? So let me take that question first, and then I do want to go back to what the district court did, Judge Haynes. To take that question head on. In our heart of hearts, we've been here for ten years. The thing we want most at the end of the day is this case to be over. So we're perfectly content to go back to the panel and make our merits arguments all over again. We're perfectly content for this court to reach those merits arguments and resolve the case once and for all. That's our front line preference. What we said in the supplemental en banc brief is that short of that, given how much time has passed, and given, I think, some agreement on some clear and indisputable errors that the district court made below, it would make sense at a minimum to vacate and remand so that the district court could properly apply the law. Those are two different preferences that can't coexist, but regardless of what this court wants to do, at the end of the day, I think what has happened in this litigation has gone on long enough, and we're asking for it to end. And that's why I think this court's assertion of jurisdiction is so important. I do want to answer your first question, Judge Haynes, which was, what else did the district court expect to do in this case? What the order says, what the judgment says, is that the case is closed and the district court retains jurisdiction over any procedures that arise during the implementation of the special master scheme. I think that's exactly what you see in each of the institutional reform cases that this court sees day in and day out. The implementation of what? Has the district court decided even what's going to be implemented? It has, Your Honor, and that's where I was going with Judge Haynes, which is on ROA 30660, you see the last line of the district court's remedy opinion that says, the plaintiffs have shown that they're entitled to permanent injunctive relief. I'm going to enter that permanent injunction by a separate order. Next page, ROA 30661, there's your permanent injunction. She didn't title the remedial order a permanent injunction, but I think that is the only plausible interpretation of that order, because it immediately requires us to step through a number of hoops to implement that special master scheme. And I think that's important, Judge Douglas, especially for PLRA purposes, because before the district court could enter that sort of injunctive relief, the PLRA required the district court to make the need, narrowness, and intrusiveness findings. I mean, requiring us to accommodate the special masters, to dedicate specific state employees to implementing their visits to the premises and their searches through our records, that is quintessential injunctive relief. And yet, if you look at the- Sounds like discovery to me, it sounds like it's similar to discovery in a normal case. Judge Douglas, I mean, the case is over by the district court's perspective. The time for discovery has long passed. I think by the district court's own perspective, what she understood herself to be doing is installing a scheme that would be implemented during what this court calls a continuing remedial period. That is what follows after final judgment in all institutional reform cases. And I think what that order requires us to do today, with respect to the special masters, is a blatant violation of the PLRA. And I think that's why jurisdiction in this court is so important, because if you don't assert jurisdiction in this case, what you're doing is you're allowing the district court to run roughshod over the PLRA's requirements by allowing it to implement a plan that it couldn't legally implement- Mr. Ogden, yeah, I got you. Mr. Ogden, excuse me, seniority. I'll be quick. Didn't the, didn't, am I not correct that the plaintiffs themselves acknowledged that what the district court had done in regard to special masters did not follow the PLRA PLRA in terms of how to select a special master, not three special masters, and who should pay for them? That's correct, Judge Jones. At the panel stage, they conceded that if the PLRA governs the appointment of the special masters, the district court's handling of this plan and implementation of it does not comply with the PLRA at all. They have this threshold argument about how the special master provisions in the PLRA don't govern at all, respectfully, that it's just wrong, but yes, assuming it does and it does apply here, there's no question that the district court did not comply with how you appoint special masters, how you pay for them, the circumstances in which you can actually use them. I think that's one of the most important things in the PLRA is it says if you're going to use a special master district courts, the first thing you have to do is make a finding that the issue is sufficiently complex that you need a special master. That's a threshold, that's a very tall bar at the threshold of the analysis, and if you don't make that finding, the district court has no power to implement a special master scheme. And I think that's why, if you look at cases like Miller v. French, that say the whole point of the PLRA is to curb district courts' equitable discretion, that is a very tangible example of curbing district courts' equitable discretion and forbidding them from doing what they had originally tried to do before the PLRA was enacted. Judge Higginson. Just on referral authority generally, referral authority generally and whether referrals from district courts in post-judgment rulings to magistrates under 636 for damages, if you know of any circuit ever that has allowed a piecemeal interruptive appeal, because somehow the referral order is conclusive, one, and particularly here, since it was to special masters using Rule 53, doesn't it automatically fail the second element? Because you have to have a right that is otherwise lost to appeal. But if you have a referral to a special master, you're guaranteed two appeals, correct? In other words, you get de novo review of any recommendation, any finding to the district court. So the request for 1291 intervention now actually undercuts your otherwise appellate rights. So Judge Higginson, that's not correct, and I have a couple of responses to that. One is that the PLRA itself expressly contemplates that there are going to be multiple appeals in this context. If you look at 3626F3, which the plaintiffs cite in a footnote in their supplemental en banc brief, that expressly allows an interlocutory appeal from the appointment of a special master. If you look at subsection F1A of 3626, the PLRA expressly— I'm asking you do you have any 1291. You began by saying our jurisdiction rests on 1291. My question to you is do you have any Rule 53 or any 636 post-judgment referral to a magistrate or special master where a circuit court accepted a piecemeal appeal before relief was granted? So I don't, Judge Higginson, because none of the parties have addressed that issue. I'd be happy—we'd be happy to do that research. Well, what about—they did address Higgnall-Stark. Pardon me, Your Honor? Four times in their brief. Pardon me? Higgnall-Stark, which seems like a much more current description rule of law than last century's Morales's footnote. So if you remember their citation to Higgnall-Stark, the rule of law citing the Supreme Court there is you have to specify relief and resolve relief. It's difficult for me to see that the referral both specifies all relief the plaintiffs could get and resolves it. And, Your Honor, what I would say to that is that what Higgnall-Stark says is it repeats that common line in Supreme Court's cases that say that you have to identify both the liability portion of the judgment, but you also have to specify the remedies that the plaintiffs will receive. I think what the remedial order in this case does is specify exactly what that scheme is. It sets up a framework outside of the district court to resolve all remedial issues post-judgment. And I think what Morales says goes a little bit further to say just establishing the scheme is not enough. It goes further to say that the district court also has to specify what is the baseline for what the plans that that scheme produces looks like. And I think that's where we cite the Armstrong case from the Ninth Circuit in our briefs, and here I'm going to bleed a little bit into 1292A1, but I think the Armstrong case is an especially good case for us because it demonstrates the consensus view among the circuits that so long... You're very informed and I appreciate that. Just for time and me not to ask too many questions, when you look at Armstrong, I latch onto the appellate perspective test. Could the appellate perspective change? Here, Louisiana is saying everything has changed. We've improved at all. I thought Louisiana was saying we want our improvements to be looked into. So how would that not mean the appellate perspective, if we waited, could change to the point there would be no relief? Sure. I want to hit that Eighth Amendment question and then I want to hit the PLRA aspect to it. The answer to your question, Judge Higginson, is that that's an argument for vacature, which we're content to have if the court thinks that's appropriate. The argument for reversal is you look at the snapshot in time when the district court entered judgment and you ask, did the district court consider current conditions up to the point of judgment? The answer to that question is going to be the same today as it is 20 years from now with whatever remedial plan that the special masters put into place. That answer is not changing because you're looking retrospectively at what happened up to the point of judgment. Last question, and I appreciate this exchange. It's helpful. If we switch to 1292, aren't you essentially asking us to create a variant on A3? In other words, when I look at the rules, it looks like Congress gave exactly what you're asking for in the admiralty context. Liability ruling, you get to go directly appeal. We're not going to wait for long remedies. But if Congress could write that under A3, why would we write it in elsewhere? So, Your Honor, I don't candidly, I don't think we've looked at that question because that's another one also that hasn't been briefed by the parties. I'd be happy to look at it. My impression is to say, since the Supreme Court decided the shoe case in the 1960s onward, you look at cases like Morales, this case like Braxton, cases like Armstrong, everybody has understood 1292A1 to at least allow an appeal where there is a specific minimum standards that the district court has set out. I think certainly other provisions in federal law that establish this court's jurisdiction could address other narrow contexts and apply certain rules in those contexts. I think as a default rule, 1292A1 gives us what we need. And that's why I think Armstrong is important. If I could just take one minute to describe why Armstrong is so helpful here. Judge Higginson, you pointed to the second exception. And I've asked a lot of questions. So you, they probably, others are going to, they don't have to keep. I'd be happy to tell the whole court why Armstrong is really good for us. Judge Higginson rightly latched onto the second exception that the Armstrong Court in the Ninth Circuit recognized, which is if the appellate perspective's not going to change depending on what the remedial plans ultimately look like, then that's a good reason to find jurisdiction. Another exception that Armstrong recognized, that the Ninth Circuit recognized there was the first one, which is has the district court specified, and this is like Morales, has the district court specified what that forthcoming remedial plan should look like? Now, if you look at that page, page 1022 of Armstrong, look at what the Ninth Circuit cites. It cites the district court's order. It's ECF 158 in the Armstrong district court's docket. ECF 158 is the remedial order that the Ninth Circuit was considering in Armstrong. And the Ninth Circuit cites pages two and three of that order. Pages two and three have a very short bulleted list of the policies, procedures, and plans that the defendants were expected to implement in a remedial plan. And I think if you look up at that list, which, and I'm happy to read the court just a couple, for example, disability grievance procedures, reception center processing times, accommodations for inmates with disabilities in emergency situations, you see some of the most vague instructions to anyone drafting a forthcoming remedial plan. And the Ninth Circuit in Armstrong looked exactly at that and said, this is proper for appeal under 1292A1. I think if you match up that bulleted list on pages two and three of the district court's order in Armstrong against what we have here, over 200 pages of liability opinion, remedy opinion, remedial order, as I say, we are leaps and bounds beyond what those courts thought was sufficient. That's 1292A1. I'm happy to continue further. I just say, in the global scheme of things, I think one of the deepest ironies in this case as we move further and further beyond the last time that the district court considered evidence on the ground, one of the deepest ironies is that we have been reaccredited now twice, once in 2022, which the district court had before it, evidence that it refused to consider post-trial. And just last month, we had been recredited again by the American Correctional Association, where auditors come out to LSP, and many in the world view that as the gold standard of correctional standards. And those auditors came out and gave us the same score they gave us in 2022, 100% on mandatory standards, 99% on non-mandatory standards, almost 600 standards, including standards regarding our healthcare at LSP. The ACA says you are batting 1,000. And one of the deepest ironies in this case is that while we are batting 1,000 by the ACA standards, the district court in this case sees Eighth Amendment and ADA violations right and left. That's wrong. That's why we're asking this court to assert its jurisdiction. Unless the court has other questions, I'm happy to cede the balance of my time to the court. Well, there are other cases. This is just the first in a line of litigation against the state prisons, isn't it? That's right, Judge Jones. You, Judge Duncan, Judge Douglas, know about the Charles case, where the district court in that case is proceeding lockstep with the orders in this case, down to the word and to the requirement, creating special master schemes, requiring us to pay for special masters. This has basically been a game plan for district courts all over the state to greenlight the same claims against the state. And that's why, in a way, this is sort of a bellwether case, and that's why it is so important for this court to get the jurisdictional question right and ultimately the merits question right. In the motion for stay that you filed in the Westcott case on yesterday, or your office, I'm not sure if you filed it specifically. But there, it seems to me to acknowledge that it's after the special master is appointed that various obligations will kick in. So why wouldn't we wait until after the special masters were appointed in this case? I mean, why isn't it premature just on that basis alone? Your Honor, the reason is that the special master scheme is unlawful from the jump. I think once the district court appoints the special masters in this case, under its plain terms of the remedial order, what the district court is allowing the special masters to do is immediately enter our premises, enter our records, and go through all the hoops that the remedial order sets out. Our position to the court is that you don't even get to that point if the district court had actually complied with the PLRA in trying to establish the scheme. And so that's why we have appealed before the appointment. As you know, the court entered a stay after we submitted names to the district court for proposed special masters, but the stay has prevented that appointment from happening and thereby triggering all of these other obligations. So does that mean that the special masters, the fact that they may not find constitutional violations or tweak things here and there, that's almost beside the point? Because the order did not purport to give the special masters the power to question the district court's liability. Is that correct? That's correct, Chief Judge Elrod. And you know, at page 41 of the supplemental en banc brief from the other side, Judge Higginson, my friends on the other side make the point about whether the appellate perspective will change. And they say, well, if you look at the need, narrowness and intrusiveness requirements of the PLRA, we can't actually run that analysis yet because we don't have a special master plan yet. That completely misses the problem. The problem is you don't have a special master scheme at all if the district court had first complied with the PLRA to justify the special master scheme in the first place. Well, besides that, the special masters are specifically ordered in the remedial order to cure the violations found. And I believe you can correct me if I'm wrong. I think that the district court in the remedial opinion, time after time said the state said they're making changes, but they're not really doing it. And the violations are still there. So is that correct? That is correct, Judge Jones. I think one of the strangest things about the remedy opinion is almost to a topic, the district court outlined various topics that it was addressing, almost to a topic before it went on to find violations, the district court conceded that we had made changes in one instance conceding that that was a framework for constitutional health care. And then the district court would flip on and say you haven't done enough. In the Eighth Amendment analysis, the question is whether our response is reasonable and we're not subjectively deliberately indifferent. Well, the point is she was reemphasizing these extremely detailed violations that she had found in the liability order. Why is there any indication in anything from the district court that she would allow the special masters to water down the nature of the violations? If they did that, Your Honor, they would be directly violating the remedial order. I mean, I think when the district court, at least when I read the district court to say, cure and eliminate violations in the liability opinion and the remedy opinion, there is no wiggle room on what the special masters can do in terms of curing them. They can decide which way to go. Whenever you say cure and eliminate, what she actually said was develop and propose plans to cure and eliminate. The violations failed. I'm just, am I right when I quote, develop, propose remedial plan? That comes before cure and eliminate. To cure and eliminate. And for the life of me, I do not understand the distinction that the plaintiffs try to make with that language. Because at the end of the day, what the special masters are being required to do is propose something that's going to cure and eliminate specific violations. And remember the question here for jurisdictional purpose is whether the district court specified what the minimum standards of the plans have to be. So whether they actually cure and eliminate or whether the proposed plans are to cure and eliminate, I think Harvey resolved that reading of the text. At the end of the day, the special masters have to comply with the minimum standards that the district court set out. The plaintiffs gave hundreds of specific remedial plans, but those were denied two years ago. We would have had a final judgment then, but we denied those saying, we need to get discovery. We need to find out if the conditions have changed. Why would I remedy anything if there isn't anything to remedy? And that's one of the strangest things, Your Honor, is that you can't order a remedy if you're not sure if there are current violations to begin with. I mean, that is Farmer versus Brennan. That's Valentine. And if the district court were unsure about what the lay of the land actually is, you can't enter final judgment. In your brief, I mean, Valentine comes up pretty late and it still rests on the assumption we have both jurisdiction and that there is an existing injunction instead of future styled injunction. In other words, you have to get past both those to get to the PLRA issue, which the panel didn't really do as far as I read it. So, Your Honor, I think there were a couple of things embedded in there. The current conditions requirement from Valentine is an Eighth Amendment test. There's a separate question about whether you have to show a current and ongoing violation under the PLRA to get any injunctive relief. That's the question footnote four, Judge Duncan. I know in Dockery versus Cain, I know the court declined to wade into a circuit conflict on that question. This court has chimed in in Ruiz versus United States. That's 243 F third 941. That's a case where the court said that in order to get injunctive relief under the PLRA, you do have to show a current and ongoing violation. I think that just flows from the plain text. So, Your Honor, I'm not sure where you're going with the jurisdictional part of that, but we get to the same current conditions point under both the PLRA as to the ADA claims and then under the Eighth Amendment as to Farmer versus Brennan. Chief Judge Elrod, I'm happy to sit down. Thank you for your argument. You save time for rebuttal. May it please the court. This appeal presents a basic question of appellate jurisdiction. Does the party have an appeal as of right before the court has issued a remedy? Under bedrock rules of finality, the answer is no. That is neither a final judgment nor is it an injunction. This appeal is therefore premature. To argue otherwise, defendants ignore black letter law altogether. They don't cite a single jurisdictional case from this court or the Supreme Court from the last half century. Instead, they try to expand a narrow exception so that it would swallow the rule. It's important to correctly define that exception. In every case defendants cite, the district court explicitly stated what defendants would be enjoined to do for plaintiffs or what they would be enjoined from doing to them. Those requirements might not come into effect until defendants submitted a plan showing how they would implement them. But the district court had explicitly prescribed the minimum content of the remedy, using language clearly stating that defendants were enjoined or ordered to do these things or that they must do them going forward. The Armstrong case, which my counsel focused on, is a good example. If you look at page 1022, which he cited, the Ninth Circuit focuses on the fact that the court said that they will cluster class members in a certain way. This is true of Braxton and Morales. It's true of defendants out-of-circuit cases. And it's true of the cases cited in the panel descent. But it is not true of this case. Here, the district court held that defendants' practices, taken as a whole, subject plaintiffs to a substantial risk of serious harm any time they develop serious medical needs. And it found that defendants knew about that risk and failed to take reasonable steps to abate it, that there were many practices that contributed to the risk and defendants had not taken reasonable steps to try to prevent that risk. But it has not yet determined the narrowest and least intrusive way to remedy that constitutional violation, nor the ADA violation. It has not ordered defendants to change a single thing about how they treat plaintiffs, nor has it indicated what it will order defendants to do for plaintiffs to afford them relief. We asked the court to identify minimum standards, like in Morales, but it declined to do so. Instead, it's getting an impartial expert recommendation and then giving the defendants another chance to shape the appropriate remedy. Rather than rushing to an injunction, it is taking a cautious path, giving defendants multiple opportunities to show that an injunction is unnecessary or show how it should be narrowly tailored, just as this court and the Supreme Court have recommended. Until that process is done, the district court's work is incomplete. It has not disassociated itself from this case, and defendants do not have an appeal as of right. Defendants' other arguments fare no better. Most emphatically, they speculate that the procedures the district court established will lead to some intolerable imposition on prison, but the district court expressly limited its appointees' inquiry to reasonable access and necessary documents. There is no basis for predicting that the court will ignore the limitations that it set. My friend also talked a lot about how long this case has taken. And yes, plaintiffs have been waiting more than a decade for relief from the unconscionable and deliberately indifferent mistreatment that has contributed to scores of preventable deaths, including several of the named plaintiffs, our clients. They have proven it twice at trial, but have yet to receive any relief. And now, when they were months away from finally getting an injunction requiring defendants to change their practices, this premature appeal has forced plaintiffs to wait another two years and produce the exact kind of piecemeal appeal that the final judgment rule exists to prevent. The proper course of action is to return this case to the district court so it can finish its work and then hear defendants' appeal when there is a final judgment and a remedy to review. Thank you. I welcome the court's questions. Mr. Doudner, are you, do you accept the validity of the practical effects test for appealability under 1292A1? Yes, under Carson v. American Brands. Yes, Your Honor. All right. So you said that it's not necessary. You said that it's important that the district court hasn't put the right terminology on its order. But the Supreme Court just last April in Department of Education v. California cited its 2018 case in Abbott v. Perez. And here's what the court said about this. If the availability of an interlocutory review depended on the district court's use of the term injunction or some other particular language, Congress's scheme could be frustrated. The harms that Congress wanted to avoid could occur as long as the district court was careful about its terminology. The practical effect inquiry prevents such manipulation. So the court is saying if the practical effect, regardless of how the order reads, is that of an injunction, then there is jurisdiction. Yes, I think Abbott is a good distinction from this case because the practical effect there was that Texas could not use its maps in an election that was two months away. Here, by contrast, defendants don't have to change anything. Excuse me, sir, but they have to hire, they're supposed to confer and hire three special masters within 14 days. Your business about reasonable access to the prison, in my view, is somewhat misleading because the document requests are supposed to be complied within 24 hours. The prison is required to designate employees to work with the special masters to obtain access, including to the prisoners themselves, which could pose security risks. And finally, the state is required to pay for the special masters. And by the way, all of that is in violation of the PLRA, but which specifically says, and I disagree with my colleague respectfully, the, quote, special masters that the court, the court didn't say they're under Rule 53 or under Rule 636. In fact, you tried to characterize them as experts, if I'm not mistaken. So it seems to me that there's a lot of relief that is forcing things on the state, in addition to the huge changes that the state has made in the prison system as this litigation has been ongoing. I'll try to take the pieces of that question one at a time, Your Honor. I think to start with the question of what defendants have to do now, no, they don't have to hire anybody. The only thing that defendants have currently been obligated to do is to propose names for special masters. Who pays for them? When they are appointed, once they submit invoices under this order, it would be the state, Your Honor. Okay. Of course, they have not yet been ordered to pay a dime and they won't be until a- You know that's not consistent with the PLRA. If you'd like to switch to the PLRA, sort of both whether it applies and the pieces of it, we know that, yes, if 3626F applies in this situation- Of course, your only suggestion otherwise is an outlier second circuit opinion. The law says that the court may appoint a special master, even your own brief acknowledged that, even my other colleagues in the majority acknowledge that she requires three. The law says they are to be paid according to the CJA, 3006. Respectfully, Your Honor, there are a couple things I have to disagree with in there. First, Benjamin v. Frazier is not an outlier. It is the leading case and the only line of cases that exists right now. The second circuit and the ninth circuit and multiple district courts have all reached the same conclusion and nobody anywhere has disagreed with it. I would disagree it's an outlier. We, of course, recognize it's not binding on this court. We also recognize, as you say, that there is uncertainty. The judge didn't say what authority it was appointing them under. Was it appointing them under Rule 53? Did it intend them to have the quasi-judicial duties of master? Was it appointing them under inherent power? That is, we asked the court to clarify it. We didn't get that clarification. In terms of, I'd be happy to go into why I think Benjamin v. Frazier is right, but I think that opinion is quite thorough. In terms of what happens if the court disagrees, creates a circuit split, we fully agree the method of nomination has to change and the method of payment has to change. We do disagree with this idea that courts are limited to one special master. This was one sentence in defendant's principal brief and it is not something that any court or anybody has ever suggested. I would push against it in a couple different ways. The first is that, of course, the default rule is the Dictionary Act 1 U.S.C. 1, which says that ordinarily, not always, but the default rule- Well, I don't wanna, I don't wanna... You're entitled to argue what you want and I don't want you to feel that you have to go off on a rabbit trail about this. We disagree. And if, of course, the entire court disagrees, the entire court can disagree. I wouldn't agree that the majority has ruled on this. They have a footnote saying they're not reaching it. That is all. But certainly I would point out that this Rule 53 has the exact same structure as 3626F. It uses masters as the header and then it uses a master singular throughout. Nobody would assert that that limits courts to one special master. And if you look at how Niz Chavez treats this question, certainly that's looking at things that would make the statute unworkable, a statute of limitations or stop time rule that couldn't work with multiple documents. There's just nothing like that here. So I'll move on from that. Do you see any daylight between the liability and remedial opinions designating unlawful conditions and the minimum standards that would be required for compliance? There's a little bit of daylight in terms of some things that the court said, yes, this has changed. Defendants have taken reasonable steps. You know, the minimal standard that is stated by both opinions is that courts, you know, have conditions of confinement that as a whole prevent access to a identifiable human need, the right to medical care. What specifically in the record is there that suggests that the district court might revisit liability standards? I think what suggests it most prominently is that it didn't order or suggest that any specific thing must be changed. It didn't say that, you know, whether it's sick call or anything else, that there was a specific change that was needed, a specific practice that, you know, must be changed the way that Morales did. I think that, you know, going back to Morales, as my friend did, is instructive here. He read some of those vaguer elements and asserted that's what the court had in mind. There's no basis for saying, you know, that as opposed to more specific ones. But even just looking at those general standards, he's omitting what comes right before the list, which is a statement in each place that the plaintiff's constitutional right requires at a minimum the maintenance of the following standards. There is nothing like that in this case. We, of course, asked for it and defendants didn't oppose our remedial proposal in any way. Is it your position that Morales, do you agree that Morales holds that the order requiring the parties to meet and negotiate a plan complying with the decision is itself a mandatory injunction, which is appealable? Do you agree with that sentence that that's what a holding of Morales? I don't think that sentence can be read in isolation, which is how defendants would, because if it did, it would be inconsistent with Braxton. It would be inconsistent with Carson and Deepwater Horizon. I think it has to be read in context of the entire paragraph, the entire footnote. You know, certainly, you know, as my friend said, we're not arguing that Morales should be overruled, but interpreted the way defendants do. It would need to be overruled. I think Morales is really at the outer bounds. But you didn't argue in your brief that it needed to be overruled. No, Your Honor, because we think defendants are misinterpreting it. OK, so what is the proper interpretation of the holding that says the order requiring the parties meet and negotiate a plan complying with the decision is itself a mandatory injunction, which is appealable? Yes, I think that that is in light of the minimum constitutional standards that Morales entered in a very different way from this case. Again, I think that, you know, reading that sentence in isolation. Yes, that is incompatible with, you know, not just law since then, but law before then. Braxton, of course, said this order is appealable, if at all, under 1292A1 and not 1291. Actually, the Supreme Court said that it was appealable under 1292A1. The Supreme Court actually said 1291, which is why we haven't challenged that. And so, yeah, we're not disputing that Morales is right. We are disputing that their interpretation of Morales is right. We don't think that there is any inconsistency in either this court's cases or the out-of-circuit cases. You know, as defendants said, Armstrong v. Wilson, Parsons v. Ryan, all of these cases apply the same dichotomy or sort of standard that this court does. I think Braxton is very instructive here. In Braxton, the court said this opinion is reviewable, even though there's going to be a remedial plan, because the court has enjoined and restrained permanently the defendants from doing this list of five practices. It then distinguishes Taylor v. Board of Education, Judge Friendly's decision, which, similarly to our case, had a robust liability finding, but said, I'm not going to determine the extent to which plaintiffs are entitled to any of the relief that they have. This court said its holding is consistent with Taylor, and that really is where the distinction is. Has the court ordered or enjoined or said defendants must do whatever the practices are that they have identified as minimum standards? Can I pick up with you right there about my understanding is that you think that the court, the district court, Judge Dick, did not order the defendants to do anything, change their conduct in any way. So I want to make sure I get it. The remedial order says at 30666, the special masters shall be given reasonable access to class members. So if I'm understanding what you mean, the defendants were under no obligation to give reasonable access to class members, to the special masters. That's not a form of relief. It's not something that we had asked for in the complaint. So their practices towards plaintiffs have not changed. In terms of access, certainly plaintiffs counsel, the experts in this case, I suppose the court, all had access to class members on reasonable terms already. So that's not something that's a change. OK, how about this one? The Department of Corrections shall designate a warden to coordinate and facilitate the special masters. Suppose that the Department of Corrections decide, you know what, there is no remedial plan in place yet. I realize there's a final judgment issued along with this injunctive order, but we don't have to do it because the special masters haven't come to, you know, we haven't had the special masters appointed yet. We haven't paid special bills yet. So we're just not going to do it. We're not going to designate the thing that Judge Dick told us to do. They could have done that, right? No contempt of court. They're fine. You know, I'm not sure if there would be contempt of court, but if there were, it would be no different from an order to have a site visit under the federal rules. Because of course, if a court orders a site visit, defendants say, we're not going to do it, that they might be held in contempt. That doesn't make the order for a site visit. Under the federal rules of discovery, correct? Exactly. Perfect sense. So what would be an example of an injunction like that, accompanied with an exactly conterminous judgment, right? These are both issued on November 6th, 2023. So what would be an example of that where we said, no, that's not actually final? I'm sorry, I'm not understanding. Are you asking for a case or? Yeah, give me an example of a circumstance where a court orders a defendant to do something at the exact same time, literally the next document in our 30,000 page record is a document called judgment. And we said, no, what? That's actually not final under 1291 or injunctive under 1292. What would be an example? I share your pause. Yeah, well, I believe that I forget if it's Hignell, Stark or Euchardt, but similarly has a judgment. And the court said, you don't look at whether the court labeled something judgment. You look at what it actually did and what it ordered. I don't recall if there was any sort of and this is how we will conduct the remedy. I believe there was, but I forget which of those two cases. Since you bringing up like the fact that labels don't matter and I appreciated your response to Judge Smith at the beginning of this argument about Abbott versus Perez. What was the map that was going to be used? You said, oh, well, the court enjoined the issue, the use of Texas's existing maps. What was the map that was to be used that allowed 12? It's obviously 1253 jurisdiction in that case, because it's a three judge court, but it would be our factual equivalent of 1292A. What was the map at issue there that the state was going to use? That hasn't been determined yet. Exactly. What did the court order? The court, if I remember correctly, the court had ordered further hearings on what the map would be. But what the way that the Supreme Court interpreted that order was to say in no uncertain terms, the current map cannot be used. They cannot conduct their election this way. That would be like saying defendants cannot right now. Treat plaintiffs the way they have, they cannot deny the medical care, they cannot refuse to send them out when they have emergency situations. That is very different from what we have here. Well, Mr. Dubner, shortly after the court issued, or maybe it was when she's describing the background of the litigation in the 104 page remedial order. She says that after she issued the liability order, she made it and she quotes a paragraph. She made it very clear to the plaintiff, to the defendants, that they were required to start curing the violations. She tried to get the parties to mediate without success. But nevertheless, she telegraphed in the strongest possible terms that the defendants, and this is in 2018, seven years ago, were required to start upgrading their facilities. And that's why when you have the remedial opinion, five years later, they've added more personnel. They've started electronic record keeping, although she refused to consider that. They've fully overhauled each of the 15 areas of concern. So I would describe what the district court did in the liability opinion a little bit differently, because the district court did not order them to change these. Well, sometimes judges essentially tell people what they have to do. And that is the path that this court recommended in Dockery that the Supreme Court recommended in Farmer, that it may be appropriate for the court to consider giving defendants time to rectify its issues before determining whether there's an injunction. That's exactly what the district court did here. That's how the district court. Sometimes I think we're reading different opinions. I know you've been involved with this a lot longer. I read 200 pages. It's really getting into the weeds of patient care. And if you like, I can tell you about infirmary and patient care, which goes on for about three or four pages. It's your argument. Yeah, I would be happy to get in the weeds, but we would be here not just all day, but all week if we were to get into some of those facts. And that's what I want to ask about is. So I asked your opponent, what if we decided we had jurisdiction? Well, let me ask the other way. What if the majority of the en banc court determines that we lack jurisdiction and we remanded? What will happen? Because this has been going on forever and you all need to resolve the two sets. To me, y'all should just go out and resolve it. But tell me what will happen, assuming arguendo that y'all can't agree on the resolution. What would happen if we remanded this? We lack jurisdiction. Send it back. Now what? Yeah, this is, I think, the clearest point of agreement. You know, both sides think that this case needs to come to a conclusion. We have a very different view of that conclusion, but our priority is to get a remedy that is in effect and is enforceable, is upheld. In terms of what should happen on remand, we believe that the district court can proceed with its plan, which calls for first the special masters to be appointed. They have not yet been appointed. At that point, when they are appointed, the court will presumably make, whether it's significant complexity or NNI findings. And when they conclude, the parties will have a chance to propose amendments. Of course, we expect defendants will want to support their amendments or objections with evidence. We look forward to working with them to determine what is the most efficient way to give them that opportunity, to let them put in whatever evidence, you know, they think these two years we've been waiting during this appeal require. And for us to have a chance to test that and then the court to consider the party's amendments and then the court to decide the remedy, at which point, unquestionably, this will be an appealable injunction. Number one, have you applied for attorney's fees under the court's order yet? Under the court's order? Yes, we did. So that implies that the liability phase that the case that, you know, you've got a judgment, right? It implies that we're the prevailing party. And yes, there are certainly things that, you know, are indicia of judgments here. The court, of course, entered something named judgment. That doesn't control the question. Number two, is there anything in what the court has written that talks about what you are describing? These ongoing further proceedings and more evidence. I don't see anything in the record about any of that. It's not specifically stated. And of course, the court wasn't expecting that there would be a two year delay before it would embark on this. Well, I know. But yes, I mean, the court did allow for the parties to suggest to propose amendments. We assumed all along that that would involve defendants saying there's an amendment that's appropriate because this has changed, for example, in the remedial order. I do think it is, you know, fairly implied by the amendment suggestion. But, you know, I understand that it's not explicitly in there, but also that does show how premature this is. We're speculating about what the district court will or won't do in a way that would not be necessary that will certainly change the appellate perspective, going to that Armstrong exception. And your opponent, while claiming that they want the merits to be decided, actually said the court should confirm that it has appellate jurisdiction and vacate and remand to the district court for proceedings consistent with the Eighth Amendment and so on. Well, so they're asking to remand, although they want to vacate and remand, and you're asking to remand as lacking jurisdiction. So there is stuff yet to be done. That's the key to me, that there is stuff yet to be done. So why are we doing it? Why aren't we sending it back to the district court? I would say this is why we have the final judgment rule. Why? Since the Judiciary Act of 1789, the rule has been that only final judgments or injunctions are appealable. And this court and the Supreme Court have said, you know, that they should be extended only gingerly. You know, yes, this case has taken a long time. But, you know, as Judge Jones, you said last year, hard cases often take years to reach judgment. Well, excuse me. Well, it has been 10 years. But apart from that, I think it's not quite accurate to suggest that the defendants are just seeking a remand. What the defendants are seeking is a vacate of the judgment and remand. And, of course, that poses the fundamental issue on which you disagree, which is whether the liability findings had to be consonant with the deliberate indifference standard set forth in Farmer and then with the needs known as intrusiveness requirement of the PLRA. You both disagree violently on that. That's certainly right, Your Honor. And it would be, it would foster, wouldn't it further things if this court were to rule on those merits? God forbid it goes back to our panel, but that's what you asked. And we asked because we assumed that that would be more efficient to the extent that this court feels that the full court can, you know, more expeditiously resolve the merits issues if it determines there's jurisdiction. You know, we would, you know, have no objection to that. But, you know, I think that there are differences between the remands that we're suggesting, of course. Defendants do want to reverse at least or vacate at least the remedial order and then separately everything the district court has done. Yeah, but vacating is a little different from reversing because it's basically just throwing it back. It's not us saying, oh, we think you were totally wrong, district court. It's just us throwing it back, start again and get it done. And so your opponent isn't even really addressing the merits with us on that. It is just saying send it back, start it again on the Eighth Amendment, et cetera, et cetera. So I guess like I'm saying, what, however we phrase it, what would happen if we send it back? I mean, that's what I think is what we need to know. Yeah, and I think there are three different paths here. The one is the one that I already articulated, sending it back with no vacature of anything. The other is defendant's first option, which is vacate the remedial order due to the PLRA supposed violations, which again, we concur that there are two if the court finds that it applies. And in that case, the court would presumably want to issue something similar, but complying with the PLRA, I don't know if the court would do something differently. Then there's option three that defendants have of vacating everything, which would do nothing except erasing 10 years of work. Because, of course, even if you assume that the remedy did not properly allow or will not properly change conditions, even if you assume that more needed to be done before a remedy could be issued, the historical question, the liability question of whether or not defendants had been violating plaintiff's rights is not affected by those issues. What does it mean for an injunction going forward is separate. So if you vacate those substantive opinions, all that's going to happen is much of that is going to be re-litigated on the exact same standards of evidence. Because, of course, however current conditions are construed, the history of things, is it longstanding and pervasive? Have defendants been aware of it? Have they made reasonable attempts to rectify it? All of that will still be relevant. So certainly vacating the substantive opinions would do nothing but start the court back at square zero. I'm not sure I understood in that last question about the third option, because my understanding of this is that the only relevant question in terms of liability is what were the facts on the ground in November of 2023, right? Like we've said every court across the country, as far as I know, has said, right, that you can't impose liability. And when she issues this final judgment on the sixth day of November 2023, the question is, were they violating the Eighth Amendment at that time, a year after they had been certified to be in compliance with every mandatory condition imposed on the entire Department of Corrections? I'm not sure I understand why the historical stuff is relevant to that question. No, Your Honor. You know, on the historical stuff, as I said, the question about the deficiencies, longstanding, et cetera, is all relevant. But beyond that, no, I don't believe that's a correct statement of case law, either under the Eighth Amendment or under the PLRA. You know, Valentine did not and could not create the rule that a court must only look at to the minute of the judgment fact or the defendants have an inalienable right to introduce new evidence. Can you unpack those? I want to hear both of them. But, like, Valentine specifically says that. So it does say it, but you're saying it couldn't say it. I both couldn't and didn't. To start with couldn't, of course, it couldn't because it would conflict with both Plata and Farmer, which say that it is in the court's discretion whether to admit evidence that postdates the pleadings. That's, you know, square Supreme Court law. This court has settled it. It didn't say it for two reasons. One, because Valentine didn't involve any evidentiary issues. Nobody was disputing that evidence had been improperly excluded. So the idea that Valentine changed evidentiary standards is not something from that case. But what it said was the evidence through the time of judgment. It didn't say any facts. It said evidence. And evidence is what has been admitted into the record or what is susceptible to judicial notice. You know, if it had said any facts that a party wants them to consider, that would be something different. But, of course, that would throw out Title V of the rules of civil procedure altogether. It would throw out Rule 403. It would throw out a court's ability to manage its docket, as well as, of course, throwing out Plata and Farmer. So, you know, I really don't think that that is a certainly not a necessary and not appropriate reading of Valentine. Thank you. Thank you. Thank you, Chief Judge Elrod. Just a few brief points on rebuttal. First, Judge Oldham, to pick up on that last point about does Valentine say what it actually says. We briefed this extensively in our reply brief. And if you look at pages around two to five of our reply brief at the panel stage, we directly address all the things you just heard from my friend on the other side. Respectfully, he's wrong. And for all of those reasons, Judge Haynes, the reason we didn't focus so much on the merits in our supplemental en banc brief is that we presented to the court in the en banc petition, and we understand the court to have granted the question of jurisdiction because that's what the panel majority addressed. And so out of respect for this court's ordinary en banc practice, we refrained from hitting the merits too heavily. So that's why you see only a brief gesture at the end. With respect to what our preference is, I think what you heard from the other side is that they want this to go on for another 10 years. And with all due respect, like, we want out of this. We, and if this court says, if you send this back, Judge Haynes, if you, if the court sends this back to the district court, I think history foretells what's coming, which is more years of litigation. And that's why our top line preference all along has been, please reverse the erroneous judgment below. That remains our top line preference here. And what we said in the supplemental brief is that if there's no appetite for that, you could at least vacate and remand because of all the errors that we've outlined on the merits. How much would you expect the special master to make on this case? I don't know, Judge Ho, is the honest answer. What I do know is that the plaintiffs... That would be a good source of income. Pardon me, Your Honor? A good source of income. It would. The plaintiffs themselves are seeking nearly $10 million for their work in this case. I think we could expect the special masters to seek similar fees. And, you know, I think what the district court is proposing here, which this court is familiar with, is retaining, continuing remedial jurisdiction. The boogeyman in this court's precedence that is in all institutional reform cases. And that's what we're desperately trying to avoid here. The third thing I would say to the court is I heard from my friend on the other side that the district court and identifying all the alleged violations in the liability opinion and the remedy opinion was not actually saying that those are constitutional violations and we don't have to fix any of those. I think that's certainly wrong if you look at the end of the remedy opinion, the district court's remedy opinion, there's a very short two or three paragraphs under the heading PLRA. What the district court says there is she accuses the state defendants of not taking account for what she says were violations that must be remedied in the liability opinion. Of course, we firmly disagree with her characterization, but the district court left nothing to doubt that her own perspective was that the state defendants already should have been fixing all of the violations that she identified in the liability opinion. The last thing I would just leave the court with very briefly is I think the general tenor of my friend's briefing on the other side and argument is that we should just trust the process. Our masters will be good to us. They will be good for us. With all due respect, the process has been the punishment here. I mean, 10 years so far in this litigation, we're at this point where we have a final judgment there is a reason that Valentine's current conditions rule exist. There is a reason the PLRA exists. That is why we're asking you to exercise your jurisdiction in this case to resolve and reverse the errors below. Thank you, Chief Judge Alrod. We appreciate the arguments in this case. This case is submitted. The court will stand adjourned pursuant to the usual order. Thank you.